IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-30139-WDS |
| | ) | |
| JOSIAH COMPTON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress statements (Doc. 543), to which the government has filed a response (Doc. 556). The Court held an evidentiary hearing on the motion and took the matter under advisement.

Defendant's motion asserts that at the time of his arrest he gave statements to law enforcement, but that he was coerced into the interview and made statements as a result of receiving pressure from his then-attorney and law enforcement. He also asserts that he was told that if he gave a statement that his statement would not be held against him. He therefore asserts that the statements made were not voluntary and therefore should be suppressed.

**DISCUSSION**

**A.    Evidence Adduced At the Evidentiary Hearing**

At the evidentiary hearing, the government presented evidence that there were five sets of statements taken in this case. The first statements were taken on April 8, 2004, the day after the defendant was arrested. The second set of statements were taken on April 9, 2004, when the

1

agents returned to speak to the defendant.  The third statement was taken later that same day, and the fourth statement was taken on May 7, 2004, in the presence of defendant's then counsel, Tom Hildebrand.   At that statement the defendant and his attorney went to MEGSI Headquarters of the Illinois State Police and gave a set of statements. There was another statement which was taken on May 4, 2005, when agents from the Illinois State Police and Drug Enforcement Administration met with the defendant and he gave a proffer.   At that time, defendant was represented by appointed counsel Brian Trentman.  The government indicates that the May 4, 2005, statement was part of a proffer and the government does not intend to introduce that statement at trial as part of its case in chief.

Michael Parkinson, a Detective with the City of Granite City, testified that on April 7, 2004, he was a Granite City Police Officer, assigned as a Special Agent to MEGSI.  He was part of the team that executed a search warrant at a residence where the defendant was arrested.  On April 8, 2004, Parkinson, and Special Agent Charles Bremer, another Granite City police officer assigned to MEGSI, spoke to the defendant at the Madison County Jail in Edwardsville, Illinois. The defendant had been arrested on outstanding warrants that were unrelated to the search of the residence.

At the jail, defendant was read his rights from a standard MEGSI form.  The defendant indicated that he understood his rights, but refused to sign the form.  He did not appear to be under the influence of any drugs or alcohol and was described by Parkinson as articulate and intelligent.  Parkinson further testified that there were no promises made to the defendant and that he spoke with them voluntarily and freely.  They specifically discussed the gun that was seized at the residence where defendant was arrested as well as the narcotics that were found

there. The defendant indicated that the gun belonged to his girlfriend, Shavanda[1] Watkins. The defendant did not want to write anything, and wanted to be assured that he would be charged in state court, not federal court. Parkinson told the defendant that he could make no promises about where it would eventually be tried.

The defendant offered to give Parkinson information about other crimes, including the whereabouts of a fugitive wanted for murder. He also discussed his knowledge of alleged police improprieties in Venice, Illinois, and then said that he wanted to rest and think about it until the next day.

On the next day, April 9, 2004, Parkinson and Bremer returned to Madison County Jail to talk with the defendant, who was again read his *Miranda* rights, and again refused to write anything. He did, however, speak freely to the officers and said that he wanted to cooperate. The defendant was advised that if he wanted to cooperate, he would have to tell the truth and that he could no longer deal in drugs and the like. The defendant told them that he would need some time before he could cooperate because the drug dealers on the street would not trust him right away when he got out of jail. The officers then left to attend a meeting, but returned to continue their discussions with the defendant later that afternoon. At that time, they gave the defendant their pager numbers and told him that once he made bond he should contact them.

Bremer testified that each time they talked with the defendant he was read his *Miranda* rights by one of the officers or read the form himself and was actually given the form by Parkinson. However, defendant refused to sign the form. Bremer testified that the defendant appeared to understand his rights and did not appear to be under the influence of anything, nor

---

[1] It was unclear if her correct name is "Sharranda" or "Shavanda." The Court will refer to her as "Shavanda."

was there undue strain or pressure. Bremer testified that defendant's statements were limited as to any drug involvement or knowledge and that he said that he did not want to "go into that" at the time of his questioning.

The defendant testified in his own behalf that at the time of the questioning when he was given the *Miranda* form he pushed it back to the officers and told them that he would not sign it and that he did not want to talk. The defendant asserted that he only answered one question about the gun, confirming that it belonged to Shavanda, and that he did not indicate to the officers that they should or could come back the next day to talk with him. He stated that he was not read his rights on that second day, and was not given a form to read or to sign. He testified that he told the officers that he did not have anything to say to them and that on one occasion, April 8, 2004, while he was being held in the Madison County Jail, he was told that he had an attorney visitor, but it was actually Parkinson who attempted to interview him. After the defendant was released, he went to his attorney's office, Tom Hildebrand, where Parkinson and Bremer and some additional four or five agents were apparently waiting for him there. The defendant stated that he was threatened with indictment by the officers, but that he was not questioned nor did he make a statement at that time.

On another occasion, the defendant received a call from Hildebrand to meet him at Illinois State Police Headquarters. When the defendant arrived, he was met by Hildebrand and some six or seven officers, those who had been at Hildebrand's office. The defendant testified that he was questioned, but that he did not enter into that questioning willingly.

On cross-examination, the defendant acknowledged that he has been arrested and charged several times over the past seventeen years, but that at each event, he was neither given his

*Miranda* rights nor did he make a statement.  He did, however, acknowledge that he is familiar with his rights.

    **B.**    **Motion to Suppress statements**

Defendant seeks suppression of any statements he made on the grounds that his statements were not voluntary.   It was clear from the hearing that although the defendant refused to sign the *Miranda* warning form, his *Miranda* rights were read to him, he was competent and not under any disability, and voluntarily gave an oral statement to Parkinson and Bremer.  There is nothing in the record to indicate that the defendant was suffering from an overborne will or was not properly advised of his rights under *Miranda*.  The Court **FINDS** more credible the testimony of Parkinson and Bremer that the defendant was advised of his rights before any questioning began.   The Seventh Circuit has stated that:

> the voluntariness of a statement is determined "by considering whether, in light of the totality of the circumstances, the statement was the product of a rational intellect and free will," "or whether it was obtained by the authorities through coercive means," *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir.1997) (*citing Mincey v. Arizona*, 437 U.S. 385, 398 (1978), and *Colorado v. Connelly*, 479 U.S. 157, 165(1986)).

*Ruvalcaba v. Chandler, 416 F.3d 555,* 561 (7th Cir. 2005).

Here, there is simply no evidence that the defendant's will was overborne, or that he was subject to improper, coercive actions by law enforcement.   Although he refused to sign the waiver, that does not render his confession involuntary, as the Seventh Circuit has held.   In *United States v. Smith,* 218 F.3d 777 (7th Cir. 2000), the court stated:

> a Miranda waiver need not be express. It may be inferred from a defendant's understanding of her rights coupled with a course of

>conduct reflecting her desire to give up her right to remain silent. *North Carolina v. Butler*, 441 U.S. 369, 373-76 (1979). Indeed, waiver may be inferred from the defendant's conduct, even when she has refused to sign a waiver form. *United States v. Banks*, 78 F.3d 1190, 1196-98 (7th Cir.1996), *vacated on other grounds*, 519 U.S.(1996), *on remand*, *United States v. Mills*, 122 F.3d 346 (1997), *cert. denied* 522 U.S. 1033 (1997).

218 F.3d at 280.   Here, the defendant indicated his intent to help himself by cooperating, and answering the officers questions, at least in part.  The mere fact that he refused to sign the waiver form does not mean that he did not intend to waive his rights under *Miranda.*

Further, "In evaluating whether a suspect voluntarily waived his *Miranda* rights, we consider the same factors that we considered above in assessing the overall voluntariness of a confession."  416 F.3d at 562  (citations omitted).  Applying this standard, the Court **FINDS** that the defendant voluntarily chose to cooperate, and give a statement to the law enforcement agents.

Accordingly, the Court **DENIES** defendant's motion to suppress statements on all grounds raised.

**IT IS SO ORDERED.**

**DATED: October 4, 2006.**

                                          **s/ WILLIAM D. STIEHL**
                                              **DISTRICT JUDGE**