IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-30139-WDS |
| ) | |
| JOSIAH COMPTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to suppress evidence (Doc. 580), to which the government has filed a response (Doc. 589). The Court held an evidentiary hearing on the motion and took the matter under advisement, pending post-hearing briefing by the parties. The post hearing briefs have now been filed (Docs. 600, 601).

Defendant seeks suppression of evidence seized during an April 7, 2004, search of a residence at 1302 Robin Street, Venice, Illinois, on the grounds that state officers obtained a search warrant based on information received as part of a federal wire tap that had been conducted as part of a federal drug investigation. The defendant asserts that the absence of federal officers at the execution of the search warrant violated Fed. R. Crim. P. 41, and that the officers who conducted the search failed to provide a copy of the warrant and list of property seized to the defendant in violation of the Fourth Amendment.

## BACKGROUND

At the evidentiary hearing, the defendant presented the testimony of DEA Special Agent Michael Rehg, who testified that in 2004, as part of a Title III investigation, DEA learned that the defendant was a customer of one J.T. Ellis. That information was shared with local law

enforcement, MEGSI (Metropolitan Enforcement Group Southern Illinois), on April 7, 2004. MEGSI was, as it turned out, preparing that day to seek a search warrant for the defendant's candy shop, Candy Cravers and More Store. Special Agent Rehg advised MEGSI that if they were going to get a warrant for the shop, DEA had information that there were possibly narcotics there and that DEA had observed a delivery of narcotics to the defendant's home. Special Agent Rehg said he could provide MEGSI with additional probable cause with respect to defendant's residence. At the time the warrant was prepared and executed, Special Agent Rehg testified that DEA did not know if the defendant would be prosecuted federally or by the state. Special Agent Rehg testified that he did not attempt to enlist the state officers to do the warrant for his federal investigation. He stated that all that he did was provide them with additional information concerning the residence.

     Detective Michael Parkinson, Granite City Police Department, testified that he was formerly with MEGSI, and while at MEGSI, was contacted by Steven Shelby of the Madison, Illinois, Police Department, who indicated that he had a person at the station who wanted to give information with respect to the defendant, Compton. Parkinson went to the Madison Police Department and interviewed the informant who Parkinson knew from a prior dealing. The informant, who lived above the defendant's candy store stated that he had been with Compton the night before and met him at the candy store where they counted out a large amount of currency. The informant said that he could smell cocaine cooking through the air vents. He saw a large amount of money and cocaine in the candy store. Based on this information, Parkinson sought a search warrant. Parkinson and Special Agent Michael Dixon prepared the affidavit for the warrant. Parkinson testified that he did not "pre-plan" with Special Agent Rehg about where the case would eventually be presented for prosecution.

     The search warrants were granted by the state court in Madison County, Illinois, and

were executed simultaneously at the candy store location and at the residence on Robin Street, Venice Illinois. They had information that the defendant often carried firearms, therefore, a tactical unit executed the warrant on the home on Robin Street. The house had been fortified with bars on the windows and doors. The warrant was a "knock and announce" warrant, and Parkinson testified that they knocked, gave someone time to answer, and then entered the house. Once the people inside were secured by the tactical unit, Parkinson went into the residence and an inventory was taken of the items seized from the home by another agent. Parkinson took a copy of the search warrant with him to the Madison County Jail where he interviewed the defendant. Parkinson placed the copy of the warrant with the defendant's personal property.

The defendant, Josiah Compton, testified that his sister owns the candy store where the warrant was executed, and that he owns another store a few miles away. He testified that the store has no stove, but that it does have electricity and other utilities.

## DISCUSSION

The defendant's motion was initially framed as a two-part attack on the validity and execution of the search warrant. The first argument is that the warrant was improper because state agents sought and executed the state warrant based on federal information without the presence of federal agents at the execution of the warrant, and that this violated Fed. R. Crim. P. 41. The second is that the state warrant was improperly executed. Post-hearing, the defendant has also challenged the reliability of the confidential informant and that there were violations of the "knock and announce" rule.

1.  **Alleged violations of Rule 41**

Rule 41 provides the manner and method for obtaining and executing a federal search warrant. The Seventh Circuit has held that Rule 41 may not be used to suppress evidence, *see In re Search of the Office of Ken Tylman,* 245 F.3d 978, 980 (7th Cir.2001); *United States v. Trost*,

152 F. 3d 715, 721-22 (7th Cir. 1998).  "[T]echnical defects in a warrant do not call for or permit exclusion of what the search produces."  152 F.3d at 772 (*quoting United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir. 1987)).   "Foibles in the administration of Rule 41 are not grounds for exclusion."  152 F.3d at 722.

Here, the record before the Court reveals that the warrants executed on the Robin Street and at the candy store were issued by a state court judge, based on an application and a sworn affidavit.  There is nothing in the record that would support defendant's contention that the state warrant was applied for at the request, or on behalf of federal agents.  Nor is there any evidence that there was any attempt by federal agents to use the state court warrant system to avoid federal warrant requirements.   Although state law enforcement received information from federal agents that was part of the basis for seeking the warrant, the triggering event for the state warrant was the information provided to Detective Parkinson by a confidential informant.   The Court **FINDS** that there were no violation of Rule 41 in this case, and the motion to suppress on that ground is **DENIED**.

### 2.  Issuance and Execution of the State Search Warrants

The Court has reviewed the search warrant documents (Government's Ex. #1) and finds that a fair reading of the affidavit in support of the warrant provides sufficient probable cause for the issuance of the warrant by the state court judge.    The Seventh Circuit has held:

> We will declare a search warrant invalid and exclude the fruits of the search if the defendant can show by a preponderance of the evidence that: (1) the search warrant affiant committed perjury or acted with reckless disregard by including false statements in the warrant affidavit, and (2) upon the exclusion of those false statements from the search warrant (and inclusion of any omitted material facts) the remaining information is insufficient to establish probable cause.

*United States v. Taylor*, No 05-3819 at *6 (7th Cir. Dec. 20, 2006) (*citing United States v.*

4

*Franks*, 438 U.S. 154, 155-56 (1978)). The defendant has attempted to challenge the validity of the warrant by calling into question the confidential informant's credibility. He claims that the legitimacy of the finding of probable cause is based upon the confidential informant's reliability, veracity and basis of knowledge.

In this case, the warrant affidavit was based upon several pieces of information. The first detailed in the affidavit is the information provided to Parkinson by a confidential informant on April 7, 2004, who described meeting the defendant at the candy store where the CI counted small bills totaling over $70,000, and they weighed and bagged about 16 ounces of crack cocaine. The CI detailed locking the money and crack in a lock box in the kitchen of the store, and that the CI kept the key at his apartment. In addition, the CI described that he had seen a half-pound of marijuana in the store and that the defendant's sister, Celena Compton, a/k/a "CC" sold the marijuana at the store.

In addition, the affidavit includes an incident on September 9, 2003, when Illinois State Police went to 1302 Robin Street, after receiving information from a CI known as "Joe Bugg," that the residence was a stash house for the defendant. While agents were talking to two persons standing in the front yard at the residence, they observed a bag sitting on the lawn of the home, just North of the front porch. Agents looked into the bag and found it had approximately one ounce of marijuana and four plastic bags with approximately one ounce of powder cocaine each. The two individuals denied ownership of the bag. A woman, Shronda Watkins, came out of the house while the agents were there, acknowledged that she is friends with the defendant, but that he did not live with her. She would not consent to a search of the house. The agents identified a silver Chrysler at the residence as belonging to Watkins by making a LEADS inquiry. They also noticed several pieces of mail lying in plain view inside the car which were

addressed to Josiah Compton.

Also on April 7, 2004, Parkinson spoke with Special Agent Rehg who informed Parkinson that DEA was conducting a cocaine conspiracy investigation and that the previous day, they had intercepted a conversation between a large-scale cocaine dealer in the area and the defendant. The two arranged to meet after the defendant indicated that he wanted to spend "12" on his vehicle.  (The affidavit provides that $12,000 was the purchase price of a ½ kilogram of cocaine, or for 16 ounces.)   The distributor was placed under surveillance and was observed traveling from an area in East St. Louis to 1302 Robin Street at approximately 5:00 P.M.

The affidavit includes information received from interviews and proffers conducted beginning in 2000, with various individuals who identified the defendant as their source of either cocaine, heroin, and/or marijuana.  Several identified the defendant as their cocaine distributor and detailed purchasing drugs from the defendant, several times, sometimes in fairly large quantities.  The affidavit also details a failed traffic stop in Venice, Illinois, on July 17, 2002, where the driver of the car evaded the attempt to arrest him.  The car was later found abandoned in Venice, and inside was a gym bag with a wallet with identification for "Josiah Compton," and 13 grams of cocaine and 24 bags of marijuana, weighing approximately 60 grams. Approximately two weeks later, MEGSI interviewed a different confidential informant who indicated that the defendant had told him/her on July 17, 2002, that he had almost been stopped by the State Police and that he had left ½ ounce of cocaine in the car.  This CI also indicated that the defendant had stated that when he ran from the car he had made sure to take his gun with him and that the gun had been on the seat of the car when the officers tried to stop him.

"Probable cause exists when, considering all the circumstances, the affidavit sets forth sufficient facts to induce a reasonably prudent person to believe that a search will uncover

6

contraband or evidence of a crime." *United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006). Further, "[t]he affidavit is to be interpreted in a practical, 'common-sense manner.'" *Id.* (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also, United States v. Walker*, 237 F.3d 845, 850 (7th Cir. 2001). Here, the probable cause was based, in part, on the information provided by a confidential informant who detailed activities with the defendant at the candy store a few days before the warrant was issued. Parkinson indicated at the hearing that he had used this particular CI on at least one prior occasion.[1] This information, was not, however, the sole basis for probable cause. Rather, there were several incidents over a period of time involving the defendant and drug activities, including sales or distribution that occurred out of the Robin Street residence as well as the candy store.

Even if the confidential informant who detailed counting the money was not reliable or credible, and this Court is not making that determination, the warrant was based on more than just the information provided by that CI.. Clearly, there was no "bad faith" in this case which would warrant suppression of the seized evidence. *Sidwell*, 440 F. 3d at 869 ("suppression would be appropriate only if the officer lacked good faith in relying on an invalidated search warrant.") Just as in *Sidwell*, *id.*, Parkinson's "decision to seek a warrant is prima facie evidence that he was acting in good faith." In light of the record, the Court **FINDS** that the defendant's challenge to the warrant based on the reliability or credibility of the confidential informant does not provide a basis for suppressing the evidence in this case, and the motion on this ground is **DENIED**.

   3.  **Knock and Announce Warrant**

Finally, the defendant asserts that the state law enforcement officers did not knock and

---

[1] Parkinson testified that he thought this CI had been used on at least one prior occasion, but did not recall the details of that incident, including whether there were any arrests that resulted from that prior incident.

announce prior to forcing entry into the residence at 1302 Robin Street. Although the defendant asserts this, there is simply no evidence in the record to contradict the testimony of Detective Parkinson that the tactical unit which entered the house knocked and gave time for someone inside to answer before breaking in the door. Absent evidence to the contrary, the Court finds that this argument provides no basis for suppressing evidence and that part of defendant's motion is **DENIED**.

## CONCLUSION

Therefore, for all of the above reasons, the Court **DENIES** defendant's motion to suppress on all grounds raised.

**IT IS SO ORDERED.**

**DATED: January 18, 2007.**

                                              **s/ WILLIAM D. STIEHL**
                                                  **DISTRICT JUDGE**